STATE of Maine

v.

Robert A. DEMATTEO.

Supreme Judicial Court of Maine.

July 31, 1973.

Foahd J. Saliem, John R. Atwood, Asst. Attys. Gen., Augusta, for plaintiff.

Smith, Elliott, Wood & Nelson, P. A., by George F. Wood, Saco, for defendant.

Before DUFRESNE C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

This appeal results from a judgment on a verdict of guilty returned by a jury after a trial in which the appellant was charged with the crime of larceny of $6,900. (17 M.R.S.A. § 2101.) Although many points of appeal were originally assigned, an amendment to the points of appeal limited the issues.

Before us now for consideration are but three points:

1. That the evidence is insufficient to sustain a conviction for the alleged offense.

2. That the jury instructions, as a matter of law, were confusing as to the law applicable to the extent to deprive the Defendant of a fair trial.

3. That a portion of the jury charge, even though taken partially out of context, is devoid of essential impartiality and tainted with inflammatory import.

Concerning point one we see no merit.

■ The jury clearly was justified on the evidence in finding that the defendant received $6,900 in cash for the purpose of counting it preliminarily to turning over some coins he had agreed to sell to those who supplied the $6,900. He then told the prospective purchasers of the coins that his partner, who, he said, was outside the room, wanted to see the cash. He then left the room and disappeared with the $6,900. He was not apprehended until many days later.

Under the circumstances the record amply supports jury's finding that he was guilty of larceny.

■ No objection was entered to any portion of the charge of the presiding Justice. Since the issues the defendant now raises were not saved by being brought to the attention of the trial court, such issues may be now reviewed only as they constitute "obvious errors or defects affecting substantial rights." M.R.Crim.P. Rule 52 (b).

■ The presiding Justice instructed the jury that if the money was delivered to the defendant to enable him to count it and he converted it to his own use with the intention of permanently depriving the rightful owners of their property he is guilty of larceny. State v. Coombs, 55 Me. 477, is authority for the rule that in the circumstances here described the converter of property of another is guilty of larceny. See also State v. Boisvert, Me., 236 A.2d 419 at 423 (1967).

The instruction as given was not erroneous.

■ Complaint is registered before us that the presiding Justice, by instructing the jury in terms of the State's contention was, in effect, causing the jury to conclude that the presiding Justice believed the State's contention. The language in the charge of which the defendant complains was:

"In fine, what I am saying to you is that, as I understand the contention of the State, that Mr. Leighton and Mr. Bisognani—I guess this is the way it is pronounced—the State says that they were there and that the money was delivered—if there was money delivered—that it was delivered to the Defendant at bar solely for the purpose of counting it to ascertain that they were competent and ready to undertake the purchase of some chattels which he claimed to own or control, or to have the right to sell and deliver to them."

Appellant's argument completely overlooks the fact that the Presiding Justice continued:

"Now, this, again, involves your inquiry into the state of mind of the people who are making the complaint; namely, Mr. Leighton and Mr. Bisognani. Was the property delivered to the Defendant with the intention to give him the immediate lawful possession thereof, and he receiving it without any fraudulent intent to convert or deprive the owners of it?

"If he acquired a lawful possession with the consent, express or implied, of the owners of the money, and he just simply later betrayed a trust, it is another offense, but it is not larceny, and your verdict under this indictment would have to be not guilty. On the other hand—if the contention is correct of the Defense—and this would be the contention as I understand of the Defense—that this was the state of facts, then the Defendant received the money lawfully. It was voluntarily handed to him with no expectation that it should be returned, but that its equivalent in coins should be the quid pro quo."

We conclude the instructions to the jury were well-balanced and in a very proper way called attention to the position of the state and position of the defendant without emphasizing either to the prejudice of the other.

The appellant's complaint is without merit.

At one point in the course of instructing the jury the Presiding Justice said to the jury:

"And though all possible doubt may not be resolved in your minds, yet the facts may be established beyond a reasonable doubt. Were it otherwise, no one could be convicted of a commission of crime, and criminals unwhipped of justice would prey upon the public. The enforcement of law and order would be an impossibility, and liberty under the law would become a sad memory of the past."

Defendant now says this portion of the charge was "devoid of essential impartiality and tainted with inflammatory import."

The identical language of which defendant now complains was discussed by us in State v. Aubut, Me., 261 A.2d 48 (1970). What we said there has equal application in the case now before us.

The language taken out of context and standing alone most certainly sounds argumentative and perhaps even inflammatory.

■■ A charge must be considered as a whole. In this case, as in *Aubut*, supra, the Presiding Justice had very clearly defined reasonable doubt and had emphasized that it was the burden of the State to establish defendant's guilt beyond a reasonable doubt. Taken as a whole the charge as to reasonable doubt was fair and most certainly not prejudicial to the defendant.

We think it unfortunate that the words above quoted were used. While we are satisfied that no prejudice resulted to this defendant from such use in the context in which they were delivered in this case, this language has such a serious potential for prejudice that we consider, as a matter of policy, it should not be included in any charge given in the future.

We have examined the record with care and are satisfied the appellant was properly convicted and his trial was free from error requiring reversal.

The entry must be,

Appeal denied.