**STATE of Maine,**

v.

**Denise L. LANE.**

Supreme Judicial Court of Maine.

Argued Sept. 22, 1994.
Decided Nov. 15, 1994.

Michael Povich, Dist. Atty., Steven Juskewitch (orally), Asst. Dist. Atty., Ellsworth, for state.

Gary C. Hunt (orally), Blaisdell & Blaisdell, Ellsworth, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

RUDMAN, Justice.

Denise Lane appeals from an order of the Superior Court (Hancock County, *Browne, A.R.J.*) denying a motion for a new trial based on an alleged violation of her constitutional right to conduct her defense[1], ordering her to pay restitution in the amount of $500, and imposing a 10% surcharge on her fine. We agree that the trial court could find that Lane was not deprived of the opportunity to take a blood-alcohol test and affirm her conviction. The imposition of restitution is inappropriate and therefore, we vacate the entire sentence and remand for resentencing.

Officer Allan Brown of the Hancock County Sheriff's Department arrested Lane on the evening of September 13, 1989 for the operation of a motor vehicle while under the influence of intoxicating liquor.[2] In response to Lane's request for a blood test to verify her blood-alcohol content, the arresting officer escorted Lane to Maine Coast Memorial Hospital to have the test administered.[3] Once at the hospital, Lane refused to have her blood taken until she was permitted to use the bathroom. The arresting officer found Lane uncooperative and escorted her to the Hancock County jail.

Following her arraignment in the District Court, the case was removed to the Superior Court for a jury trial. The jury found her guilty of operating a motor vehicle while under the influence of alcohol. The court imposed a $400 fine, required Lane to pay restitution in the sum of $500 for "court/counsel fees," and imposed the 10% surcharge mandated by 4 M.R.S.A. § 1057 (1989). Lane's drivers' license was suspended for ninety days.

Lane's motion for a new trial and correction of the sentence were both denied. This appeal followed.

---

1. No person shall be deprived of "life, liberty or property without due process or law." U.S. Const. amend. XIV, § 1; Me. Const. art. 1, § 6–A.

2. 29 M.R.S.A. § 1312–B (Pamph.1993) sets forth:
 **1. Offense.** A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle:
 A. While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or
 B. While having 0.08% or more by weight or alcohol in his blood.
 . . . .

3. The statute relevant at the time of the incident provides in pertinent part:

 Any person who operates or attempts to operate a motor vehicle within this State shall be deemed to have given consent to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, if arrested for operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor.
 He shall be informed by a law enforcement officer of the tests available to him, and said accused shall select and designate one of those tests. At his request he may have a test of his blood administered by a physician of his choice, if reasonably available.
 29 M.R.S.A. § 1312 (1978).

#### a. Opportunity to Submit to a Chemical Test

Lane argues that her right to conduct her defense was unconstitutionally deprived when she was not provided the opportunity to develop exculpatory evidence. The court found that Lane's right to due process was not denied because "[s]he was taken to the hospital, and the person [who] was to administer the test was present and available at that juncture, and she decided that she was going to the bathroom first." Considering Lane responsible for the consequences of her conduct, the court found on ruling on Lane's motion for a new trial that she had the opportunity to take a blood test.[4] We find no clear error and affirm Lane's conviction.

We have consistently stated the right due process affords one who has been arrested for operating under the influence is not the right to have a test sample taken, but only to have a reasonable opportunity to attempt to gather the desired evidence. *State v. Munsey*, 152 Me. 198, 127 A.2d 79, 81–82 (1956); *State v. Landry*, 428 A.2d 1204 (Me.1981) (when defendant refused to submit to a chemical test until he could contact friends, he was found to have voluntarily refused a reasonable opportunity to submit to a chemical test); *State v. Copeland*, 391 A.2d 836 (Me.1978) (treating defendant's refusal to sign a release form as a refusal of the opportunity to submit to a blood test); *State v. Roberge*, 306 A.2d 13 (Me.1973) (officer refused to permit defendant to choose his own physician for a chemical test when granting defendant's request would be uneconomical and inconvenient and defendant had the opportunity to be tested at a facility used by the police department). The question is whether, in light of the totality of the circumstances, the defendant's own conduct result-ed in the failure to obtain a chemical test. *See Munsey*, 127 A.2d at 81–82.

The concept of due process "may mandate that a police officer shall not interfere with the reasonable opportunity, consistent with the demands of safe custody, of a defendant to procure the seasonable taking of a test which might provide evidence in defendant's behalf. Beyond this, however, there is no constitutional duty of a police officer *affirmatively* to assist the defendant in any undertaking to acquire such possibly exculpatory evidence." *State v. Allen*, 377 A.2d 472, 474 (Me.1977) (emphasis added by *Allen* (citation omitted)).

Due process requires only that Lane be afforded a reasonable opportunity to submit to a chemical test. *Munsey*, 127 A.2d at 82; *Allen*, 377 A.2d at 474–75. Lane was given a choice between a breath test and blood-alcohol test. The officer accommodated her request for a blood test by taking her to the hospital. She then proceeded to refuse administration of the test until she used the rest room. Lane was uncooperative with established procedure. Similar to the defendant in *Landry* who insisted on contacting friends before he would consent to a chemical test, Lane's actions could be found to have constituted a refusal to seize the available opportunity. *Landry*, 428 A.2d at 1206. The court could conclude that Lane had a reasonable opportunity to submit to a blood test.

#### b. Costs

Lane argues that the court was not authorized to order "pursuant to 17–A M.R.S.A. § 1152–2–A that defendant forfeit and pay the sum of [$]500.00 ... through the clerk's office for court/counsel fees." We find that the imposition of restitution was in this case without statutory authority.

---

4. For purposes of sentencing pursuant to the relevant statute in 1989, the court submitted to the jury the question of whether Lane refused to take the blood test. The court instructed the jury that in order to find Lane had refused, the jury would have to be persuaded beyond a reasonable doubt that Lane was given an ample opportunity to take the test. The jury found that Lane did not refuse to take the test. Presumably, the State failed to prove Lane refused to submit to a chemical test. The jury's finding does not preclude the court from finding by a preponderance of the evidence that Lane was given the opportunity to take the chemical test. Lane may not have refused, but that does not minimize the existence of an unseized opportunity.

29 M.R.S.A. § 1312–B(2)(B)(4) (Pamph.1993).

17–A M.R.S.A. § 1152(2)(A) (Supp.1993) authorizes a court to impose restitution when sentencing a criminal defendant. The purpose of restitution is to compensate victims of crime who have suffered loss through no fault of their own. 17–A M.R.S.A. § 1321 (1983). Restitution may be imposed "in whole or in part, as compensation for economic loss." 17–A M.R.S.A. 1325(1)(A) (1983).

■ Payment of restitution to the State of Maine is not specifically excluded by the statute and is therefore not beyond the trial court's scope of authority. *State v. Hopkins,* 526 A.2d 945, 949 (Me.1987) (restitution as part of sentence for charge of illegal receipt of welfare benefits was proper where victim was the State and the specific injury resulting from the crime was the loss of public welfare monies). In accord with 17–A M.R.S.A. § 1322(7), however, "[a] restitution order may encompass only economic loss *caused to a victim by the crime* for which a defendant is convicted." *State v. Beaudoin,* 503 A.2d 1289, 1290 (Me.1986) (emphasis in original); *State v. O'Donnell,* 495 A.2d 798 (Me.1985) (Legislature intended the loss incurred by the victim to be "as a result of *that* crime" named in the charging instrument).

In the instant case, Lane was convicted of the operation of a motor vehicle while under the influence of intoxicating liquor. The only conceivable victim was the State of Maine. The loss the State has incurred is the cost of detention and prosecution. The expense to the State is the result of the State's decision to prosecute and is not the type of loss envisioned by the statute. *See Beaudoin,* 503 A.2d at 1290; *O'Donnell,* 495 A.2d at 801; 17–A M.R.S.A. § 1325. We conclude that the trial court was without statutory authority to impose a sentence of restitution in this case. We therefore vacate the Superior Court's restitution order.

### c. 10% Surcharge

■ Lane contends that the Legislature is without authority to impose the 10% surcharge mandated by 4 M.R.S.A. § 1057. The statute establishes a Government Operations Surcharge Fund "for the sole purpose of reimbursing counties for costs associated with operations of the jail system." § 1057(1) (Supp.1993). The surcharge shall be imposed on every fine, forfeiture or penalty imposed. § 1057(2). We find the surcharge to be a valid exercise of legislative power.

We have previously upheld mandatory minimum sentences and fines set by the Legislature to be imposed by the judiciary. *See State v. Thibeault,* 621 A.2d 418, 419 (Me. 1993) (mandatory minimum sentencing scheme set forth in 17–A M.R.S.A. § 1251 does not impermissibly limit judicial discretion in sentencing); *State v. Briggs,* 388 A.2d 507, 509 (Me.1978) (mandatory fine provided for night hunting did not violate separation of powers provision in Constitution); *State v. Farmer,* 324 A.2d 739, 746 (Me.1974) (minimum mandatory sentence does not violate separation of powers mandate).

In the instant case, the Legislature directed that the judiciary add a mandatory 10% surcharge to any fine imposed. We find the judicial imposition of the surcharge was made pursuant to valid legislative authority and, therefore, is not an unconstitutional violation of the separation of powers.

The entry is:

Judgment of conviction affirmed.

Order of restitution vacated.

Remanded for resentencing.

All concurring.